1
2
3
4
5          UNITED STATES DISTRICT COURT
6          NORTHERN DISTRICT OF CALIFORNIA
7
8
9
10   GEORGE ANDERSON,
11          Plaintiff,                          No. C 12-3855 PJH
12      v.                                      **ORDER DENYING MOTION**
                                                **TO DISMISS**
13   JOSE SOLIS,
14          Defendant.
     _____/
15

16          Defendant's motion for an order dismissing the complaint based on qualified

17   immunity came on for hearing before this court on January 16, 2013.  Plaintiff appeared by

18   his counsel Michael D. Meadows, and defendant appeared by his counsel Karen K.

19   Lowhurst.  Having read the parties' papers and carefully considered their arguments and

20   the relevant legal authority, the court hereby DENIES the motion as follows and for the

21   reasons stated at the hearing.

22                              **BACKGROUND**

23          This is a case brought under 42 U.S.C. § 1983, seeking damages for substantive

24   due process violations, arising from an assault on a mental hospital employee by a patient

25   at the hospital.

26          The following facts are as alleged in the complaint.  From 1977 to 1985, and from

27   1991 to the present, plaintiff George Anderson ("Anderson") was employed as a

28   rehabilitation therapist at Napa State Hospital ("the Hospital"), which is operated by the

United States District Court
For the Northern District of California

1   State of California.  Defendant Jose Solis ("Solis") was a manager and senior unit

2   supervisor employed at the Hospital, and had the authority to determine matters such as

3   whether a patient would be restrained and whether an additional staff member would be

4   assigned to a patient.

5        In 2010, Sean Michael Bouchie ("Bouchie") was a patient at Napa State Hospital.

6   The treatment plan prepared by the Psychiatric Treatment Team responsible for Bouchie's

7   care directed that when Bouchie exhibited signs of agitation, a staff member on the ward

8   was required to calm Bouchie down by giving him food.  If Bouchie remained agitated, the

9   staff member was required to take him for a walk on the Hospital grounds.  Anderson was

10  the staff member assigned on his shift to care for Bouchie, and was therefore required to

11  escort him on the Hospital grounds if he became agitated.

12       On Tuesday, December 7, 2010, Bouchie chased Anderson down a hall on the

13  ward, threatening him with bodily harm.  At the staff meeting held the following day,

14  December 8, 2010, Anderson told Solis that Bouchie's behavior had changed markedly,

15  and that Bouchie was not the "good old Sean" who could be readily controlled, but had

16  become dangerous and posed an increasing threat of physical harm to staff.  Anderson

17  pleaded for assistance from Solis.

18       During that December 8, 2010 staff meeting, Anderson asked Solis to take two

19  actions which had previously been employed to address threats posed by other violent

20  patients.  He urged Solis to authorize placing Bouchie in a "walking restraint" – a restraint

21  that limits the use of the patient's arms, effectively preventing the patient from striking a

22  staff member or another patient, but which permits the patient to eat.  He also urged Solis

23  to authorize the assignment of two staff members to take care of Bouchie on each shift,

24  rather than a single staff member.

25       Anderson alleges that as the week progressed, Bouchie became more dangerous.

26  At the staff meeting on December 9, 2010, Anderson again told Solis that Bouchie had

27  become increasingly dangerous and posed a threat of physical harm to staff.  Anderson

28  again urged Solis to authorize placing Bouchie in a "walking restraint."  Anderson alleges

United States District Court

For the Northern District of California

1  that notwithstanding this request, Solis again refused to authorize the use of the "walking

2  restraint" or to assign an additional staff member to Bouchie.  That same day, December 9,

3  2010, Bouchie attacked a janitor.

4       At the staff meeting on December 10, 2010, Solis was informed of the attack on the

5  janitor, and Anderson again told him that Bouchie posed a danger to staff and urged that

6  Bouchie be placed in a "walking restraint."  Solis again refused, and also ordered that staff

7  members assigned to Bouchie (including Anderson) respond to Bouchie's agitation by

8  taking him for a walk on the Hospital grounds alone and while Bouchie was unrestrained.

9       On December 11, 2010, Anderson noted that Bouchie was becoming increasingly

10 agitated.  He understood that under the treatment plan, Bouchie was to be first offered

11 food, and if that did not calm him down, to be taken for a walk on the Hospital grounds.  He

12 also understood that he was forbidden by Solis to place a "walking restraint" on Bouchie,

13 and that he was the lone staff member assigned to Bouchie during that shift.

14      Accordingly, Anderson offered food to Bouchie, and, after his agitation did not

15 decrease, took him for a walk on the Hospital grounds.  During this walk, Bouchie attacked

16 and repeatedly pummeled Anderson.  Anderson suffered a severe concussion, four

17 fractures of the skull, brain injuries, and other injuries.

18      Anderson filed the present action on July 24, 2012, asserting a single cause of

19 action under 42 U.S.C. § 1983, for violation of his Fourteenth Amendment substantive due

20 process rights.  Solis now seeks an order pursuant to Federal Rule of Civil Procedure

21 12(b)(6), dismissing the complaint for failure to state a claim, based on qualified immunity.

22                                    **DISCUSSION**

23 A.    Legal Standard

24      A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests for the legal

25 sufficiency of the claims alleged in the complaint.  Ileto v. Glock, Inc., 349 F.3d 1191,

26 1199-1200 (9th Cir. 2003).  Review is limited to the contents of the complaint.  Allarcom

27 Pay Television, Ltd. v. Gen. Instrument Corp., 69 F.3d 381, 385 (9th Cir. 1995).  To survive

28 a motion to dismiss for failure to state a claim, a complaint generally must satisfy only the

3

United States District Court

For the Northern District of California

1    minimal notice pleading requirements of Federal Rule of Civil Procedure 8, which requires

2    that a complaint include a "short and plain statement of the claim showing that the pleader

3    is entitled to relief." Fed. R. Civ. P. 8(a)(2).

4          A complaint may be dismissed under Rule 12(b)(6) for failure to state a claim if the

5    plaintiff fails to state a cognizable legal theory, or has not alleged sufficient facts to support

6    a cognizable legal theory. Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir.

7    1990). The court is to "accept all factual allegations in the complaint as true and construe

8    the pleadings in the light most favorable to the nonmoving party." Outdoor Media Group,

9    Inc. v. City of Beaumont, 506 F.3d 895, 899-900 (9th Cir. 2007). However, legally

10   conclusory statements, not supported by actual factual allegations, need not be accepted.

11   Ashcroft v. Iqbal, 556 U.S. 662, 678-79 (2009). The allegations in the complaint "must be

12   enough to raise a right to relief above the speculative level." Bell Atlantic Corp. v.

13   Twombly, 550 U.S. 544, 555 (2007) (citations and quotations omitted).

14         A motion to dismiss should be granted if the complaint does not proffer enough facts

15   to state a claim for relief that is plausible on its face. See id. at 558-59. A claim has facial

16   plausibility when the plaintiff pleads factual content that allows the court to draw the

17   reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556

18   U.S. at 678 (citation omitted). "[W]here the well-pleaded facts do not permit the court to

19   infer more than the mere possibility of misconduct, the complaint has alleged – but it has

20   not 'show[n]' – 'that the pleader is entitled to relief.'" Id. at 679.

21   B.    Defendant's Motion

22         Solis argues that the complaint must be dismissed, based on qualified immunity.

23   Qualified immunity protects government officials "from liability for civil damages insofar as

24   their conduct does not violate clearly established statutory or constitutional rights of which a

25   reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).

26   The rule of qualified immunity protects "all but the plainly incompetent or those who

27   knowingly violate the law;" defendants can have a reasonable, but mistaken, belief about

28   the facts or about what the law requires in any given situation. Saucier v. Katz, 533 U.S.

United States District Court

For the Northern District of California

1   194, 202 (2001) (citation and quotation omitted), <u>overruled in part on other grounds by</u>

2   <u>Pearson v. Callahan</u>, 555 U.S. 223 (2009).

3       A public official's shield of qualified immunity is lost only if a plaintiff can establish

4   both that (1) taken in the light most favorable to the party asserting injury, the facts alleged

5   show that the officer's conduct violated a constitutional right, and (2) the right at issue was

6   "clearly established" at the time of the defendant's alleged misconduct.  <u>Saucier</u>, 533 U.S.

7   at 201.  The court may exercise its discretion in deciding which prong to address first, in

8   light of the particular circumstances of each case.  <u>Pearson</u>, 555 U.S. at 236.

9       Here, Solis argues that the complaint should be dismissed because Anderson has

10  failed to plead a "clearly established" constitutional right.  He asserts that Anderson does

11  not allege that he (Solis) directly violated plaintiff's right to bodily integrity, but rather that it

12  was a mentally ill patient at Napa State Hospital, for whom Anderson was responsible for

13  caring, who caused the injury.  He also contends that as a direct caregiver to persons with

14  "mental disabilities" severe enough to warrant hospitalization, Anderson had no clearly

15  established right to avoid a risk that is an inherent part of his job.  Solis argues that at most,

16  he himself might be considered to have been negligent in his role as supervisor, but asserts

17  that such negligence does not give rise to a cause of action under § 1983.

18      In response, Anderson asserts that his claim is not a claim of negligence, but rather

19  is one for violation of bodily integrity under the Fourteenth Amendment's Due Process

20  Clause, as permitted by the "state-created danger" exception.  Anderson argues that by

21  assigning him to work alone with an unrestrained and violent mental patient, and by

22  refusing his requests that some safety measures be put in place, Solis used his authority to

23  affirmatively create an opportunity for Bouchie to assault Anderson, and also acted with

24  deliberate indifference to the danger Anderson faced, particularly in light of his (Solis')

25  knowledge of the danger.

26      The court finds that the motion must be DENIED.  A qualified immunity defense is

27  generally not amenable to dismissal under Rule 12(b)(6) because facts necessary to

28  establish this affirmative defense generally must be shown by matters outside the

5

United States District Court

For the Northern District of California

1  complaint.  See Morley v. Walker, 175 F.3d 756, 761 (9th Cir. 1999).  While a ruling on

2  immunity "should be made early in the proceedings so that the costs and expenses of trial

3  are avoided where the defense is dispositive[,]" the court is usually "not equipped at this

4  stage to determine whether qualified immunity will ultimately protect [the defendant].  Those

5  issues must be resolved at summary judgment or at trial."  Saucier, 533 U.S. at 199; see

6  also Groten v. California, 251 F.3d 844, 851 (9th Cir. 2001).

7          It is true that qualified immunity can in some cases be determined in a motion under

8  Rule 12(b)(6).  See, e.g., Dunn v. Castro, 621 F.3d 1196, 1199 (9th Cir. 2010).  When the

9  record is clear that the official had a reasonable belief that his conduct was lawful, a court

10  may properly dismiss a claim on the basis of qualified immunity.  See Act Up!/Portland v.

11  Bagley, 988 F.2d 868, 873 (9th Cir. 1993).  Here, however, the court finds that the absence

12  of a fully developed factual record makes it impossible to determine whether qualified

13  immunity applies.

14          It is well-established that the Constitution protects a citizen's liberty interest in his

15  own bodily security.  See, e.g., Ingraham v. Wright, 430 U.S. 651, 673-74 (1977); Wood v.

16  Ostrander, 879 F.2d 583, 589 (9th Cir. 1989).  Nevertheless, "the Fourteenth Amendment's

17  Due Process Clause generally does not confer any affirmative right to governmental aid"

18  and "typically does not impose a duty on the state to protect individuals from third parties."

19  Patel v. Kent Sch. Dist., 648 F.3d 965, 971 (9th Cir. 2011) (citations and alterations

20  omitted).

21          There are, however, two exceptions to this rule.  First, there is the "special

22  relationship" exception – when a custodial relationship exists between the plaintiff and the

23  state such that the state assumes some responsibility for the plaintiff's safety and

24  well-being.  Henry A. v. Willden, 678 F.3d 991, 998 (9th Cir. 2012).  Second, there is the

25  "state-created danger exception" – when "the state affirmatively places the plaintiff in

26  danger by acting with 'deliberate indifference' to a 'known and obvious danger[.]'"  Id.

27  (citations omitted).  If either of these exceptions applies, a state's omission or failure to

28  protect may give rise to a § 1983 claim.  Id.

United States District Court

For the Northern District of California

1    The Ninth Circuit first recognized such "danger creation" liability in <u>Wood</u>.  In that

2  case, a state trooper determined that the driver of an automobile was intoxicated, arrested

3  the driver and impounded the car.  The officer's actions left Wood, a female passenger,

4  stranded late at night in a known high-crime area.  Subsequently, Wood accepted a ride

5  from a passing car and was raped.  The court held that Wood could claim § 1983 liability,

6  since a jury presented with the above facts could find "that [the trooper] acted with

7  deliberate indifference to Wood's interest in personal security under the fourteenth

8  amendment."  <u>Id.</u> at 588.

9    After <u>Wood</u>, the Ninth Circuit found that state officials may be held liable in a variety

10  of circumstances for their roles in creating or exposing individuals to danger they otherwise

11  would not have faced.  <u>See</u>, <u>e.g.</u>, <u>Munger v. City of Glasgow Police Dept.</u>, 227 F.3d 1082

12  (9th Cir. 2000) (holding police officers could be held liable for the hypothermia death of a

13  visibly drunk patron after ejecting him from a bar on night when the outside temperature

14  was subfreezing); <u>Penilla v. City of Huntington Park</u>, 115 F.3d 707 (9th Cir. 1997) (holding

15  as viable a state-created danger claim against police officers who, after finding a man in

16  grave need of medical care, cancelled a request for paramedics and locked him inside his

17  house); <u>L.W. v. Grubbs</u>, 974 F.2d 119 (9th Cir. 1992) ("<u>Grubbs</u>") (holding state employees

18  could be liable for the rape of a registered nurse assigned to work alone in the medical

19  clinic of a medium-security custodial institution with a known, violent sex-offender).  These

20  cases illustrate the principle that state actors may be held liable "where they affirmatively

21  place an individual in danger," <u>Munger</u>, 227 F.3d at 1086, by acting with "deliberate

22  indifference to [a] known or obvious danger in subjecting the plaintiff to it," <u>Grubbs II</u>, 92

23  F.3d at 900.

24    In <u>Kennedy v. City of Ridgefield</u>, 439 F.3d 1055 (9th Cir. 2006), a 13-year-old shot

25  two neighbors, killing the man and severely wounding his wife, eight hours after learning

26  from the police that the wife had previously reported that the 13-year-old had molested her

27  9-year-old daughter, and had also warned the police about the 13-year-old's prior violent

28  actions.  The wife later filed a § 1983 action against the city and the police officer who had

United States District Court

For the Northern District of California

1   released the information to the 13-year-old and his mother.  The district court denied

2   summary judgment on qualified immunity, and the Ninth Circuit affirmed.

3          The Ninth Circuit delineated a two-part test, requiring (1) official (state) action that

4   affirmatively placed an individual in danger; and (2) deliberate indifference to that danger.

5   Id. at 1061-62.  The court held that in examining whether an officer affirmatively places an

6   individual in danger, the court should not look solely to the agency of the individual, nor

7   should it rest its opinion on what options may or may not have been available to the

8   individual. Instead, the court must examine whether the officer left the person in a situation

9   that was more dangerous than the one in which they found him."  See id. at 1062.

10  Evaluating the officer's motion for summary judgment, the Ninth Circuit found that by

11  informing the neighbor of the allegations without first warning plaintiff, the officer involved

12  "affirmatively created an actual, particularized danger [plaintiff] would not otherwise have

13  faced."  Id. at 1063.

14         As to the second prong, the court must decide whether the danger to which the

15  defendant exposed plaintiff was known or obvious, and whether the defendant acted with

16  deliberate indifference to it.  Id. at 1064.  "[D]eliberate indifference is a stringent standard of

17  fault, requiring proof that a municipal actor disregarded a known or obvious consequence of

18  his actions."  Bryan County v. Brown, 520 U.S. 397, 410 (1997).  Because the evidence in

19  Kennedy showed that the wife had warned the officer repeatedly about the neighbor's

20  violent tendencies and specifically requested notice before the officer told the 13-year-old

21  about the molestation charge, the court found that the officer's decision to proceed without

22  such notice established deliberate indifference for purposes of summary judgment.

23  Kennedy, 439 F.3d at 1064-65.

24         Solis contends, however, that the "state-created danger" exception has not been

25  found by any court within the Ninth Circuit to apply to situations such as this one, where a

26  manager's "failure to adopt a plaintiff's preferred form of patient care" causes an injury at

27  the hands of the patient.  Solis argues that the whole point of the exception is to allow for a

28  cause of action where the state official's actions created a danger or exposed an individual

United States District Court

For the Northern District of California

1    to a danger that he or she would not otherwise have faced, and that at a mental hospital,

2    there is always a danger that a caregiver may be attacked by a mental patient.  Solis

3    asserts that the facts do not show that he took any affirmative steps that increased the

4    danger normally experienced by a worker in Anderson's position – just that he exercised his

5    discretion with regard to staffing decisions at the hospital.

6         With regard to Solis' argument that Anderson cannot establish a constitutional

7    violation because Solis did nothing to place Anderson in danger, and the alleged danger

8    was an inherent feature of Anderson's work with mentally ill patients, it appears that Solis

9    may be attempting to read the exception out of the law.  As noted above, the "state-created

10   danger" doctrine provides an exception to the general rule that the Fourteenth Amendment

11   does not impose a duty on the State to protect individuals from third parties.  "Thus, by its

12   very nature, the doctrine only applies in situations where the plaintiff was directly harmed

13   by a third party – a danger that, in every case, could be said to have 'already existed.'"

14   Henry A., 678 F.3d at 1002.

15        The "dangers" examined by the Ninth Circuit in its prior cases (cited above) – such

16   as the vengeful, unstable neighbor, see Kennedy, 439 F.3d 1055; the violent, predatory

17   inmate, see Grubb II, 92 F.3d 894; or the rapist prowling a high-crime area late at night,

18   see Wood, 879 F.2d 583 – already "existed" before the plaintiffs were harmed by them.

19   The whole point of the state-created danger doctrine is that the affirmative actions of a

20   state official created or exposed an individual to a danger which he or she would not have

21   otherwise faced.  Henry A., 678 F.3d at 1002-03 (quotations and citations omitted).

22        Here, Anderson has alleged that Solis knew of the danger posed by Bouchie, and

23   that Solis was also aware that Anderson had repeatedly requested additional security in the

24   form of use of restraints and/or an additional staff person, and that he nonetheless  acted

25   with deliberate indifference by exposing Anderson to that danger and refusing to take steps

26   to mitigate the risk.  At the very least, the court finds that there are factual issues that need

27   to be developed before any determination can be made as to whether the "state-created

28   danger" doctrine applies.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**United States District Court**
For the Northern District of California

**CONCLUSION**

In accordance with the foregoing, defendant's motion is DENIED, without prejudice to raising the qualified immunity defense in a later motion for summary judgment.

**IT IS SO ORDERED.**

Dated:  January 22, 2013

_____
PHYLLIS J. HAMILTON
United States District Judge